FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

99 JUN -3 AM 9: 23

U.S. DISTRICT COURT
N.D. OF ALABAMA

JONATHAN WILLIAMS, )
    Plaintiff; )
     )
-vs.- ) No. CV-97-P-3360-S
     )
STARSTAFF, INC.,et. al, )
    Defendants. )
     )

ENTERED
JUN 0 3 1999

## OPINION

Nine motions were taken under submission at this court's March 5, 1999 motion docket: Motion for Summary Judgment by Defendants Star Enterprise and StarStaff, Inc. (Star defendants); Motion for Summary Judgment by Defendants Blimpie, North Alabama Blimpie Development, and Ciccarelli; Motion by Plaintiff for Summary Judgment; Motion by Plaintiff to Reconsider; Motion by Plaintiff to Compel and for Sanctions; Motion by Plaintiff to Quash Defendants' Witness and Exhibit List; Motion by Plaintiff to Disallow Brief; Motion by Plaintiff to Amend Exhibit List; and Motion by Plaintiff to Quash Objections to Exhibit and Witness List.[1] After outlining the facts of this case, the court will address each motion separately.

### Facts[2]

This action alleges race discrimination and retaliation arising out of the termination of the plaintiff's employment. The plaintiff is a black male who was employed as a Complex Manager at a Texaco service station/convenience store owned and operated by defendant Star Enterprise. Star

---

[1] The last three motions were received in chambers on February 26, 1999 but not filed in the Clerk's office. The court will treat them as if they have been properly filed and docketed.

[2] The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the nonmoving party.

Enterprise's personnel are provided by StarStaff, Inc. Star Enterprise is a franchisee of Blimpie International, Inc. and has rights to operate a Blimpie restaurant inside its Texaco service station/store. Blimpie International, in turn, owns the right to enter into subfranchise agreements in which Blimpie pays the subfranchisor a commission in exchange for assisting and monitoring franchisees. Defendant North Alabama Blimpie Development, Inc. (NABD) is one such subfranchisor; defendant Michael Ciccarelli is the president and principal shareholder of NABD.

The plaintiff began his employment with Star Enterprise as a Sales Associate in October 1991. In October 1996 the plaintiff was a Complex Manager responsible for the merchandise, inventory, and funds at his store. His supervisor was Marketing Consultant Ron Rogers. The plaintiff's responsibilities included filling out a daily sales activity report, balancing the amounts reported by cashiers with the funds in the safe at the end of each shift, and depositing the money. Although the plaintiff received positive performance evaluations, he was counseled and warned several times by Rogers about performance problems, including audit shortages, inventory shortages, operational inefficiencies, and improper reporting of employees' hours.

In September 1996, Marketing Consultant Allie Hughes became the plaintiff's supervisor. On October 4, 1996 Hughes visited the plaintiff's store to conduct a random audit. In reviewing the paperwork from October 1 and 2, Hughes was unable to match the sales figures reported by the plaintiff with the actual figures recorded on the daily register tapes. She telephoned her supervisor, District Manager Gladys Sloan, to tell her she was taking the paperwork home to review. Hughes apparently found that the plaintiff had reported less sales and sales tax than the register tapes reported. Additionally, the amount of money deposited in the bank was apparently less than the amount deposited in the safe by the sales associates. The deposits from October 1 and 2 were $175.00 short. Hughes also discovered invoices entered in the wrong product category, understated mark-ups, and

time cards rounded off in violation of company policy. Hughes asked Sloan to review the paperwork. Sloan then requested that she and Hughes meet with the plaintiff.

On October 10, Sloan and Hughes met with the plaintiff. When asked about the reporting discrepancies, the plaintiff said that he had been following standard procedure and that he was too tired to comprehend what they were asking him. Hughes and Sloan met with the plaintiff again that afternoon and again the plaintiff could not explain why he had reported lesser amounts than the source documents stated. Sloan then relieved the plaintiff of duty pending the outcome of a formal investigation by Star's Security and Auditing departments. She also requested that Hughes have the locks and safe key changed.

After Star's auditing department reviewed the paperwork, Hughes and Security Coordinator Jim Bailey met with the plaintiff on October 15. Feeling as though he had already been terminated, the plaintiff offered no explanation for the discrepancies in the paperwork. Hughes then informed the plaintiff that he was being terminated for violation of company policies. The plaintiff gave Hughes a letter complaining of racial discrimination and informing the company that he would file a complaint with the EEOC if no action was taken in ten days.

Following the plaintiff's termination, Star Enterprise conducted a comprehensive audit of the plaintiff's store, covering November 1995 through October 2, 1996. The audit allegedly identified more than $21,000 in missing and unaccounted cash. The plaintiff was replaced by a white store manager. In May 1997, that manager was relieved of duty pending an investigation of violations of company policies and procedures; he subsequently resigned before he could be terminated. He was replaced by a black manager.

Within two weeks of his termination, the plaintiff filed a lawsuit against Star Enterprise, StarStaff, Hughes, Sloan, and Bailey in the Circuit Court of Jefferson County, alleging wrongful

discharge and defamation. The court dismissed the case with prejudice on February 5, 1997. On November 6, 1996, the plaintiff filed a charge of discrimination against Star Enterprise with the EEOC. He amended his charge on January 24, 1997 to include StarStaff. Both charges alleged discriminatory discharge because of race but neither mentioned hostile work environment. In September 1997, the plaintiff received a Right to Sue Letter. On December 30, 1997 the plaintiff brought this action, alleging violations of Title VII and 42 U.S.C. § 1981, 1983 & 1986. Specifically, the plaintiff contends that he was terminated because of his race and that he was subjected to a racially hostile work environment. In support of these allegations, the plaintiff claims that Ron Rogers told him that a previous District Manager called the plaintiff a "black kingpin" and that Mike Ciccarelli referred to female employees at the plaintiff's store as "lazy black bitches."

As a result of prior rulings and amendments, the remaining claims against Star Enterprise and StarStaff are plaintiff's Title VII discrimination claim and a retaliation claim relating to failure to pay vacation pay. The plaintiff also alleges claims against NABD and Ciccarelli[3] under Title VII and §§ 1981 & 1986. Additionally, the Star defendants have asserted counterclaims against the plaintiff for conversion, unjust enrichment, fraud, negligence, and breach of contract and/or fiduciary duties.

### Analysis

<u>Motion for Summary Judgment by Defendants Blimpie International, NABD, and Ciccarelli</u>

With respect to the plaintiff's Title VII claims, these defendants first argue that Ciccarelli is entitled to summary judgment because there can be no individual liability under Title VII. The defendants also argue that they do not fall within Title VII's definition of "employer" because they do not have fifteen or more employees. Additionally, the defendants contend that the "single

---

[3] In his amended complaint, the plaintiff substituted NABD for Blimpie International.

employer" or "joint employer" doctrines do not bring NABD and Ciccarelli within Title VII's reach because NABD and the Star defendants do not have interrelation of operations, common management, centralized control of labor relations, or common ownership.

The evidence indicates that, although Ciccarelli complained to Ron Rogers and to Blimpie International of inefficiencies in the Blimpie Restaurant, including inaccurate sales reporting, he had no control over the hiring, firing, discipline, promotion, demotion, or compensation of employees sufficient to invoke the joint employer doctrine. As the defendants have argued, the control that Ciccarelli and NABD had over the Star defendants was limited to that necessary to ensure the successful operation of the Blimpie franchise relationship. Because the plaintiff has failed to show that NABD and Ciccarelli had a significant degree of control over the plaintiff, so that neither Ciccarelli nor NABD is an "employer" under Title VII, the motion for summary judgment as to the Title VII claims is due to be granted.

With respect to the plaintiff's § 1981 claims, the defendants contend that summary judgment is due to be granted because they had no contractual relationship with the plaintiff and no authority to make or recommend employment action against the plaintiff. Although Ciccarelli's letter to Ron Rogers concerning inefficiencies is in the evidence, the plaintiff has failed to establish that NABD or Ciccarelli had the authority or power to make or recommend employment action against the plaintiff. Additionally, the plaintiff has not shown that NABD or Ciccarelli were at all involved in the decision to terminate him. Because no contractual relationship existed between NABD or Ciccarelli and the plaintiff, summary judgment is due to be granted as to the plaintiff's § 1981 claims.

Finally, with respect to the plaintiff's § 1986 claims, the defendants argue that summary judgment is due to be granted because the plaintiff failed to bring these claims within one year of the accrual of the cause of action. The defendants also argue that the plaintiff has not established a

violation of § 1985, a prerequisite to a § 1986 action. Although the plaintiff's allegations of secret meetings and letters do not establish a conspiracy under § 1985, the court finds that the § 1986 claim is time-barred. *See Mack v. W.R. Grace Co.*, 578 F. Supp. 626, 637 (N.D. Ga. 1983).

Motion for Summary Judgment by Defendants Star Enterprise and StarStaff, Inc.

1. Discriminatory Discharge

In support of their motion, the Star defendants first argue that the plaintiff cannot establish a prima facie case of discriminatory discharge because he cannot prove that he was qualified for the position of Complex Manager or that he was terminated while similarly situated employees who committed similar offenses were retained. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984). Although the plaintiff can show that he was replaced by a person outside the protected class, the court notes that that person was also relieved of duty because of a missing bank deposit and resigned before he could be terminated.

Assuming, for purposes of this motion, that the plaintiff can establish a prima facie case, the court finds that the defendants have offered a legitimate, nondiscriminatory reason for discharging the plaintiff. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). The defendants believed that money under the plaintiff's control was missing without explanation. Additionally, the defendants believed that the plaintiff violated company policies and procedures related to deposits, sales reports, invoices, and time cards.

To prevail, the plaintiff must establish that the employer's legitimate nondiscriminatory reason for the termination was a pretext for race discrimination. *See id.* Although the plaintiff argues that he received good performance evaluations, that the procedures he followed were consistent with other managers' practices, and that Hughes and Sloan did not account for obvious errors on the October 1 shift report, he has not shown that the proffered reasons for his termination were false or that race

was the real reason. Nothing in the evidence suggests that race motivated the termination. The remarks that are the subject of the plaintiff's hostile work environment claim were not made by the decisionmakers in this case and cannot constitute evidence of pretext. Because the plaintiff has not established pretext, the Star defendants' motion for summary judgment is due to be granted as to the discriminatory discharge claim.

2. Hostile Work Environment

In addition to arguing that this claim is barred because the plaintiff failed to assert it in his EEOC charge, the defendants contend that the plaintiff's allegations do not rise to the level of an actionable claim. The two comments that the plaintiff cites–"black kingpin" and "lazy black bitches"–are not sufficiently severe or pervasive so as to create a hostile work environment. Additionally, the allegations related to the defendants' policy of fingerprinting and photographing applicants do not support the plaintiff's claim. As a result, the defendants' motion for summary judgment as to this claim is due to be granted.

3. Retaliation

In response to the plaintiff's claim that the defendants retaliated against him by failing to pay him vacation pay, the Star defendants argue that the claim is barred because it was not raised in his EEOC charge. The defendants also assert that there is no causal connection between any protected expression and the adverse action. The plaintiff filed his state court lawsuit on October 24, 1998. The plaintiff alleges that he wrote a letter to the defendant requesting the vacation pay on October 28, 1996 but he has not produced that letter or any response to it. Although the filing of the first action may constitute statutorily protected expression, the plaintiff has failed to produce evidence that he was entitled to vacation pay, that the defendants refused to pay him, or that the defendants had been served with the state court complaint and were aware of its allegations at the time they refused to pay

him. Consequently, the defendants' motion for summary judgment as to the retaliation claim is due to be granted.

Plaintiff's Motion for Summary Judgment

Although the plaintiff styled this motion as one for Judgment as a Matter of Law, the court assumes that the plaintiff seeks summary judgment, pursuant to Rule 56, on the Star defendants' counterclaims of conversion, unjust enrichment, fraud, negligence, and breach of contract and/or fiduciary duties.[4] In support of his motion, the plaintiff has provided calculations allegedly showing that an error in the shift report for October 1, 1996 produced the discrepancy that resulted in his termination. That is, although the plaintiff signed the shift report, certifying that it was true and correct, he now contends that an error in calculation explains the shortage and entitles him to summary judgment on the defendants' counterclaims. The plaintiff also offers the decision on his unemployment compensation claim as evidence that any discrepancies in the reports were not done deliberately or intentionally. Although the plaintiff may be correct as to the October 1 calculations, and although the findings of the appeals referee may be evidence of lack of intent to deceive or defraud, the plaintiff has not established the absence of genuine issues of material fact with respect to the entire amount made the subject of the counterclaims. Therefore, the plaintiff's motion for summary judgment is due to be denied.

Plaintiff's Motion to Compel and for Sanctions

The plaintiff moved for an order compelling a response to his First Request for Production. Attached to the motion were copies of correspondence between the pro se plaintiff and the defendants' attorneys concerning an agreement whereby the Star defendants would produce certain

---

[4] Although the plaintiff also seeks summary judgment as to his retaliation claim relating to the counterclaims, the court has previously disallowed such a retaliation claim.

documents if the plaintiff would withdraw a pending motion to compel and for sanctions. At oral argument, the Star defendants informed the court that one of the pages of the letters had been altered by the plaintiff. In response, the plaintiff asserted that the parties had agreed to the changes and that he had altered the letter accordingly. Although the court declines to sanction the plaintiff for submitting an altered document in support of his motion, the court notes the seriousness of the charges made by the defendants. The plaintiff's motion to compel and for sanctions is due to be denied.

Other Motions

The plaintiff's motion to quash the Star defendants' witness and exhibit list is due to be denied. The plaintiff's motion to reconsider his motion for leave to amend his complaint to include claims for retaliation with respect to the defendants' counterclaims is due to be denied. The plaintiff's motion to disallow the Star defendants' brief is due to be denied. The plaintiff's motion to amend his exhibit list is due to be granted. The plaintiff's motion to quash the defendants' objections to his exhibit and witness list is due to be denied.

Dated: June 3, 1999

Chief Judge Sam C. Pointer, Jr.

Service list:
    S. Allen Baker, Jr.
    Spencer M. Taylor
    Jonathan Williams
    Read Gignilliat
    Alisa L. Pittman